**FILED**

MAY 1 9 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRUCE A. TISON, Executor/
Administrator for the
ESTATE OF CHARLES G. TISON,

NO. CIV. S-04-1997 LKK/GGH

      Plaintiff,

v.

                              **PRETRIAL CONFERENCE ORDER**
                                  **[FINAL]**

UNITED STATES OF AMERICA,

      Defendants.
_____/

    Pursuant to court order, a Pretrial Conference was held in Chambers on April 17, 2006. SCOTT CAMERON and TODD LOUMA appeared as counsel for plaintiff; PAUL HAM, GOUD MARGANI and YOSHINORI TOSO HIMEL appeared as counsel for defendant. Above listed counsel are therefore designated as lead trial counsel. On May 1, 2006, the court issued its tentative pretrial order. After consideration of the parties' objections and requests for augmentation, the court makes the following ORDERS:

////

1

1

## I.   JURISDICTION/VENUE

2   Jurisdiction is predicated upon 28 U.S.C. § 1346, and has
3 previously been found to be proper by order of this court, as has
4 venue.   Those orders are confirmed.

5

## II.   JURY/NON-JURY

6   Plaintiff has timely demanded a jury trial.   The government's
7 request that the court bifurcate the trial is denied.   It is the
8 court's view that the question of whether or not the decedent is
9 financially disabled addresses a question of the merits rather than
10 of jurisdiction.   In the event that the trial brief from the
11 government convinces the court otherwise, the court will treat the
12 jury's verdict as an advisory verdict concerning the facts
13 underlying the jurisdictional question.

14

## III.   UNDISPUTED FACTS

15 A.   General Facts

16   1.   On September 24, 2004 plaintiff Bruce Tison, as the
17 executor/administrator of Charles Tison's estate, filed this action
18 seeking refunds involving Charles Tison's federal income taxes for
19 the 1993 through 2001 tax years.

20   2.   Charles Tison was the father of plaintiff Bruce Tison.

21   3.   After Charles Tison's death, plaintiff Bruce Tison
22 discovered that Charles Tison had not filed any of his personal
23 federal income tax returns or Ti-Gas's corporate federal income tax
24 returns for the 1993 through 2001 tax years.

25   4.   Upon this discovery, plaintiff Bruce Tison employed James
26 York, CPA, and his staff to prepare federal income tax returns for

2

1   Charles Tison and Ti-Gas for the 1993 through 2001 tax years.

2   5.   Before January 2003, when plaintiff Bruce Tison filed
3   Charles Tison's federal income tax returns for the 1993 through
4   2001 tax years as the personal representative of Charles Tison's
5   estate, Charles Tison had not made a claim for refund for these
6   years.

7   6.   The only remaining claims for refund at issue are
8   plaintiff Bruce Tison's claims for refunds on behalf of Charles
9   Tison in the amounts of $4,756.67, $8,064.53, $45,138, $66,927, and
10  $44,148 for personal income taxes for the tax years ending December
11  31, 1993, 1994, 1996, 1997, and 1998.

12  7.   Therefore, the total amount claimed by plaintiff Bruce
13  Tison as owed to Charles Tison's estate for the 1993, 1994, 1996,
14  1997, and 1998 tax years is $169,034.20, plus any applicable
15  interest.

16  B.   Facts Related To Ti-Gas Corporation

17  8.   Ti-Gas was incorporated on August 14, 1969.

18  9.   Ti-Gas is located at 13971 River Road, Walnut Grove,
19  California ("Walnut Grove location").

20  10.   Ti-Gas has only one physical facility, located at the
21  Walnut Grove location.

22  11.   From 1985 until his death in 2002, Charles Tison was
23  Ti-Gas's sole shareholder, president and general manager.

24  12.   Plaintiff Bruce Tison is now Ti-Gas's owner, president
25  and general manager.

26  ////

3

1     13. Ti-Gas provides propane gas and services related to
2  propane gas, primarily for farms and homes.

3     14. From 1974 to 2005, Ti-Gas employed approximately five to
4  seven people at a time.

5     15. For the corporate income tax years ending July 31, 1993
6  through July 31, 2001, Ti-Gas generated gross revenues of $588,513,
7  $687,481, $690,211, $649,470, $741,424, $817,369, $1,078,725,
8  $896,780, and $1,229,620, respectively.

9     16. For the corporate income tax years ending July 31, 1993
10  through July 31, 2001, Ti-Gas generated gross profits of $265,731,
11  $302,774, $323,150, $299,712, $277,987, $347,652, $564,160,
12  $439,249, and $384,412, respectively.

13     17. From 1993 to 2001, Ti-Gas was always profitable.

14  C.  Facts Related To Charles Tison's Alcoholism

15     18. Dr. Go is plaintiff's proffered expert witness in this
16  action.

17     19. In 1996, Charles Tison attended a two-week rehabilitation
18  program related to his alcoholism.

19     20. The two-week alcohol rehabilitation program in 1996 was
20  ineffective. Charles Tison resumed his drinking soon after his
21  discharge.

22     21. Henry Go, M.D., was Charles Tison's primary physician
23  from 1986 until Charles Tison's death.

24     22. Charles Tison signed various checks to the State of
25  California Franchise Tax Board toward payment of his state income
26  tax liabilities, including a check dated April 14, 1999 in the

4

1  amount of $18,000 for the 1998 tax year, a check dated April 15,
2  1998 in the amount of $18,000 for the 1997 tax year, a check dated
3  April 15, 1996 in the amount of $3,000 for the 1995 tax year, and
4  a check dated April 15, 1994 in the amount of $12,000 for the 1993
5  tax year.

## IV.  DISPUTED FACTUAL ISSUES

7      1.    Whether or not Charles G. Tison's alcoholism was a
8  physical or mental impairment.

9      2.    Whether or not Charles G. Tison's alcoholism rendered him
10  unable to manage complex details of financial accounting required
11  to prepare corporate and personal income tax returns from 1993 to
12  2001.

13      3.    Whether or not Charles G. Tison's alcoholism prevented
14  him from providing detailed financial information to his accountant
15  from 1993 to 2001.

16      4.    Whether or not any person was authorized to act on
17  Charles G. Tison's behalf in managing his personal financial
18  matters.

19      5.    Whether or not Charles G. Tison's alcoholism prevented
20  him from managing the day-to-day operations of TiGas, such as
21  paying bills.

22      6.    Whether or not Charles G. Tison's alcoholism prevented
23  him from maintaining worker's compensation insurance.

24      7.    Whether or not Charles G. Tison's alcoholism prevented
25  him from maintaining liability insurance on his service vehicles.

26      8.    Whether or not Charles G. Tison's alcoholism prevented

5

1  him from providing required service to the customers of TiGas.

2  9.  Whether or not Charles G. Tison regularly became
3  intoxicated during the work day.

4  10.  Whether or not Charles G. Tison's intoxication regularly
5  prevented him from performing the duties of his position as manager
6  of TiGas.

7  11.  Whether or not on September 13, 2002, just prior to his
8  death, Charles Tison was admitted to the hospital for symptoms
9  related to alcohol withdrawal.

10  12.  Whether or not alcoholism was a significant contributing
11  factor to his death.

12  13.  Whether or not Plaintiff Bruce Tison satisfied the
13  requirements promulgated by the Internal Revenue Service to
14  demonstrate that Charles G. Tison was financially disabled.

15  14.  Whether or not Charles Tison died of a pulmonary embolism
16  on September 24, 2002.

17  15.  Whether or not Charles Tison was an alcoholic who died
18  at the age of 71, on September 24, 2002, of a pulmonary embolism.

19  16.  Whether or not the cause of Charles Tison's death, the
20  pulmonary embolism, was the result of being sedated and bed-ridden
21  for seven days and the consequential formation of blood clots.

22  17.  Whether or not from 1990 until Charles Tison's death,
23  Charles Tison had medical visits with Dr. Go, approximately, as
24  follows:  once in 1992, four times in 1995, once in 1997, once in
25  1998, once in 1999, and once in 2001.

26  ////

6

1    18.  Whether or not the 1992 visit was a general physical exam
2  in which Dr. Go concluded that Charles Tison was generally healthy.

3    19.  Whether or not the 1995 through 2001 visits were
4  generally related to Charles Tison's back pain, leg pain, shingles,
5  wrist pain, a colon exam, lab work, and the completion of an
6  insurance form.

7    20.  Whether or not any of the visits during 1993 through 1998
8  was directly related to Charles Tison's alcoholism.

9    21.  Whether or not during these visits, the only thing Dr.
10 Go wrote in Charles Tison's medical records relating to alcoholism
11 was on December 15, 1997 in which Dr. Go wrote then that Charles
12 Tison had attended an alcohol rehabilitation program.

13    22.  Whether or not Dr. Go provided a letter to the Internal
14 Revenue Service regarding Charles Tison's alcoholism.   In the
15 letter provided by Dr. Go to the Internal Revenue Service, Dr. Go
16 concluded that Charles Tison, although an alcoholic, was functional
17 and could work, operate, and maintain his business.

18    23.  Whether or not in Dr. Go's opinion, Charles Tison did not
19 suffer from severe alcoholism to the extent that he needed constant
20 care.  In Dr. Go's opinion, Charles Tison "was a functioning person
21 for most of the aspects of his business life . . . [who] had a
22 fanatic way of just taking care of customers" and "by and large
23 . . . had a fanatical, dedicated, driving type of energy for most
24 of the things attendant to his work."

25    24.  Whether or not as of June 26, 2001 (approximately 1 year
26 and 3 months before Charles Tison's death), Dr. Go believed that

7

1  Charles Tison did not suffer from any type of serious illness.  Dr.
2  Go believed that Charles Tison possessed the general physical and
3  mental capacity to operate a motor vehicle safely.

4  B.   Facts Related To Charles Tison's Ability To Function During
5       His Alcoholism

6       25.   Whether or not from 1993 until his final admission to the
7  hospital in September of 2002, Charles Tison would personally
8  unlock the Ti-Gas office at 6:00 a.m., Monday through Friday, to
9  let employees into the office.

10      26.   Whether or not from 1993 through 1999, Charles Tison
11  would personally lock up the Ti-Gas office at 5:00 p.m., Monday
12  through Friday.

13      27.   Whether or not from 1993 to 2002, Charles Tison continued
14  to work at Ti-Gas.

15      28.   Whether or not from 1993 to 2002, Charles Tison was as
16  the owner, president, and manager of Ti-Gas, working almost 7 days
17  per week.

18      29.   Whether or not besides two short vacations and the
19  two-week alcohol rehabilitation program in 1996, Charles Tison
20  worked continuously from 1993 to at least 2001.

21      30.   Whether or not from 1993 to at least 2000, Charles Tison
22  met and interacted with customers and suppliers.

23      31.   Whether or not from 1993 to at least 2000, Charles Tison
24  wrote and signed checks to Ti-Gas's suppliers.

25      32.   Whether or not from 1993 to at least 2000, Charles Tison
26  regularly met with Ti-Gas employees to review Ti-Gas monthly sales

8

1   figures.

2       33.   Whether or not from 1993 to at least 2000, Charles Tison
3   regularly met with Ti-Gas employees

4   to review its operating expenses.

5       34.   Whether or not from 1993 to at least 2000, Charles Tison
6   signed all of Ti-Gas's twice-a-month payroll checks to its
7   employees.

8       35.   Whether or not from 1993 to at least 2000, Charles Tison
9   approved all checks written on behalf of Ti-Gas before the checks
10  were issued.

11      36.   Whether or not from 1993 to at least 2000, Charles Tison
12  performed service work on behalf of Ti-Gas.   The service work
13  required Charles Tison to visit customers and to perform repair and
14  maintenance work on propane-related equipment.

15      37.   Whether or not from 1993 to at least 2000, Charles Tison
16  supervised the employees of Ti-Gas.

17      38.   Whether or not from 1993 until his death in 2002, Charles
18  Tison wrote checks to pay for the rent and utilities on his home.

19      39.   Whether or not for the 1993 tax year, Charles Tison filed
20  two requests for extensions of time to file his 1993 tax return,
21  on April 15, 1994 and on September 2, 2004, with the Internal
22  Revenue Service.  These requests were granted.  He sent a check in
23  the amount of $36,000 for his estimated tax liability for that
24  year.

25      40.   Whether or not for the 1994 tax year, Charles Tison filed
26  two requests for extensions of time to file his 1994 tax return,

9

1   on April 15, 1995 and on August 15, 1995, with the Internal Revenue
2   Service.   These requests were granted.   He sent a check in the
3   amount of $41,000 for his estimated tax liability for that year.

4        41.   Whether or not for the 1995 tax year, Charles Tison filed
5   two requests for extensions of time to file his 1995 tax return,
6   on April 15, 1996 and on August 15, 1996, with the Internal Revenue
7   Service.   These requests were granted.   He sent a check in the
8   amount of $40,000 for his estimated tax liability for that year.

9        42.   Whether or not for the 1996 tax year, Charles Tison filed
10  two requests for extensions of time to file his 1996 tax return,
11  on April 15, 1997 and on August 15, 1997, with the Internal Revenue
12  Service.   These requests were granted.   He sent a check in the
13  amount of $45,000 for his estimated tax liability for that year.

14       43.   Whether or not for the 1997 tax year, Charles Tison filed
15  two requests for extensions of time to file his 1997 tax return,
16  on April 15, 1998 and on August 15, 1998, with the Internal Revenue
17  Service.   These requests were granted.   He sent a check in the
18  amount of $55,000 for his estimated tax liability for that year.

19       44.   Whether or not for the 1998 tax year, Charles Tison filed
20  two requests for extensions of time to file his 1998 tax return,
21  on April 15, 1999 and on August 15, 1999, with the Internal Revenue
22  Service.   These requests were granted.   He sent a check in the
23  amount of $55,000 for his estimated tax liability for that year.

24       45.   Whether or not for the 1999 and 2001 tax years, Charles
25  Tison continued to file requests for extensions to file his tax
26  returns.   All of these requests were granted.

10

1

## V. DISPUTED EVIDENTIARY ISSUES

2    Defendant intends to bring two motions in limine: (1) to
3  exclude a party or witness from referring at any time during the
4  trial to the United States' concession that Charles Tison will be
5  refunded the relevant overpayment for any year if it is adjudicated
6  that Charles Tison was financially disabled for that particular tax
7  year; and (2) to exclude any reference by a party or witness at any
8  time during trial to the causes of Charles Tison's final
9  hospitalization and death.

10    Defendant shall bring on its motions in limine not later than
11  twenty (20) days from the date of this order. Oppositions are due
12  not later than ten (10) days thereafter. Defendant may file its
13  optional reply brief within five (5) days thereafter. The motions
14  in limine shall be set for hearing on the court's regularly
15  scheduled law and motion calendar on July 10, 2006 at 10:00 a.m.
16  in Courtroom No. 4.

17    The parties will not be permitted to bring motions in limine
18  relative to any evidentiary issues not listed in the final pretrial
19  order absent a showing that the issue was not reasonably
20  foreseeable at the time of the pretrial order.

21

## VI. RELIEF SOUGHT

22    Plaintiff seeks the following:

23    1.   Monetary recovery of overpaid taxes for tax years ending
24  December 31, 1993, 1994, 1996, 1997 and 1998, plus any applicable
25  interest; and

26    2.   Abatement of penalties and interest applied by the IRS.

11

1   Defendant seeks judgment in its favor.

2                   **VII.   POINTS OF LAW**

3       Trial briefs shall be filed with the court no later than
4   fourteen (14) days prior to the date of trial in accordance with
5   Local Rule 16-285.  The parties shall brief the following points
6   of law in their trial briefs:

7       A.   Whether or not the question of the decedent's "being
8   financially disabled" is a question going to the merits of the
9   plaintiff's cause of action or jurisdiction; and

10      B.   The elements, standards and burdens of proof relative to
11  "being financially disabled" during the relevant tax periods.

12      ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY
13  ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT
14  BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

15                  **VIII.   ABANDONED ISSUES**

16      Defendant concedes that plaintiff is owed a refund, in an
17  amount that complies with the limitations set forth in 26 U.S.C.
18  § 6511(b), if defendant was in fact financially disabled within the
19  meaning of the relevant statute.

20                      **IX.   WITNESSES**

21      Plaintiff anticipates calling the following witnesses:   <u>See</u>
22  Attachment "A."

23      Defendant anticipates calling the following witnesses:   <u>See</u>
24  Attachment "B."

25      Each party may call a witness designated by the other.

26      A.   No other witnesses will be permitted to testify unless:

                                12

1          (1)   The party offering the witness demonstrates that the
2   witness is for the purpose of rebutting evidence which could not
3   be reasonably anticipated at the Pretrial Conference, or

4          (2)   The witness was discovered after the Pretrial
5   Conference and the proffering party makes the showing required in
6   "B" below.

7          B.    Upon the post-Pretrial discovery of witnesses, the
8   attorney shall promptly inform the court and opposing parties of
9   the existence of the unlisted witnesses so that the court may
10  consider at trial whether the witnesses shall be permitted to
11  testify.   The evidence will not be permitted unless:

12         (1)   The witnesses could not reasonably have been
13  discovered prior to Pretrial;

14         (2)   The court and opposing counsel were promptly
15  notified upon discovery of the witnesses;

16         (3)   If time permitted, counsel proffered the witnesses
17  for deposition;

18         (4)   If time did not permit, a reasonable summary of the
19  witnesses' testimony was provided opposing counsel.

20              **X.   EXHIBITS, SCHEDULES AND SUMMARIES**

21         At present, plaintiff contemplates the following by way of
22  exhibits:   See Attachment "C."

23         At present, defendant contemplates the following by way of
24  exhibits:   See Attachment "D."

25         A.    No other exhibits will be permitted to be introduced
26  unless:

13

1    (1)   The party proffering the exhibit demonstrates that
2 the exhibit is for the purpose of rebutting evidence which could
3 not be reasonably anticipated at the Pretrial Conference, or

4    (2)   The exhibit was discovered after the Pretrial
5 Conference and the proffering party makes the showing required in
6 paragraph "B," below.

7    B.    Upon the post-Pretrial discovery of exhibits, the
8 attorneys shall promptly inform the court and opposing counsel of
9 the existence of such exhibits so that the court may consider at
10 trial their admissibility.   The exhibits will not be received
11 unless the proffering party demonstrates:

12    (1)   The  exhibits  could  not  reasonably  have  been
13 discovered prior to Pretrial;

14    (2)   The court and counsel were promptly informed of
15 their existence;

16    (3)   Counsel forwarded a copy of the exhibit(s)   (if
17 physically possible) to opposing counsel.   If the exhibit(s) may
18 not be copied, the proffering counsel must show that he has made
19 the exhibit(s) reasonably available for inspection by opposing
20 counsel.

21    As to each exhibit, each party is ordered to exchange copies
22 of the exhibit not later than fifteen (15) days from the date of
23 this Pretrial Order.   Each party is then granted ten (10) days to
24 file with the court and serve on opposing counsel any objections
25 to said exhibits.   In making said objections, the party is to set
26 forth the grounds for the objection.   As to each exhibit which is

14

1  not objected to, it shall be marked and received into evidence and
2  will require no further foundation. Each exhibit which is objected
3  to will be marked for identification only.

4       In addition to electronically filing said objections, if any,
5  the objections must be submitted by email, as an attachment in Word
6  or WordPerfect format, to: arivas@caed.uscourts.gov.

7       The attorney for each party is directed to appear before and
8  present an original and one (1) copy of said exhibit to Ana Rivas,
9  Deputy Courtroom Clerk, not later than 10:30 a.m. on the date set
10 for trial.   All exhibits shall be submitted to the court in
11 binders.  Plaintiff's exhibits shall be listed numerically.
12 Defendant's exhibits shall be listed alphabetically.  The parties
13 shall use the standard exhibit stickers provided by the court:
14 pink for plaintiff and blue for defendant.

15                 **XI.   DISCOVERY DOCUMENTS**

16      Plaintiff does not anticipate the introduction of discovery
17 documents in his case in chief.

18      Defendant:  See Attachment "E."

19             **XII.   FURTHER DISCOVERY OR MOTIONS**

20      Defendant is granted leave to take the depositions of
21 witnesses Ronald Paskins and James Cook not later than forty (40)
22 days from the date of this order.

23      Pursuant to the court's Status Conference Order, all discovery
24 and law and motion was to have been conducted so as to be completed
25 as of the date of the Pretrial Conference.   That order is
26 confirmed.   The parties are, of course, free to do anything they

                                 15

1  desire pursuant to informal agreement.  However, any such agreement
2  will not be enforceable in this court.

3                    **XIII.  STIPULATIONS**

4      None.

5                    **XIV.  AMENDMENTS/DISMISSALS**

6      None.

7                    **XV.  FURTHER TRIAL PREPARATION**

8      A.   Counsel are directed to Local Rule 16-285 regarding the
9  contents of and the time for filing trial briefs.

10     B.   Counsel are informed that the court has prepared a set
11 of standard jury instructions.  In general, they cover all aspects
12 of the trial except those relating to the specific claims of the
13 complaint.   Accordingly, counsel need not prepare instructions
14 concerning matters within the scope of the prepared instructions.
15 A copy of the prepared instructions was emailed to the parties
16 concurrently with the tentative pretrial order.

17     C.   Counsel are further directed that their specific jury
18 instructions shall be filed fourteen (14) calendar days prior to
19 the date of trial.  As to any instructions counsel desires to
20 offer, they shall be prepared in accordance with Local Rule 51-
21 163(b)(1) which provides:

22     "Two copies of the instructions shall be submitted. One
23     copy shall be electronically filed as a .pdf document
24     and shall contain each instruction on a separate page,
25     numbered and identified as to the party presenting it.
26     Each  instruction  shall  cite  the  decision,  statute,

16

1    ordinance, regulation or other authority supporting the
2    proposition stated in the instruction."

3    The second copy ("jury copy") shall be submitted by e-mail to
4    lkkorders@caed.uscourts.gov.

5    **In addition, counsel shall provide copies of proposed forms**
6    **of verdict, including special verdict forms, at the time the**
7    **proposed jury instructions are filed with the court.**

8    D.   It is the duty of counsel to ensure that any deposition
9    which is to be used at trial has been filed with the Clerk of the
10   Court.  Counsel are cautioned that a failure to discharge this duty
11   may result in the court precluding use of the deposition or
12   imposition of such other sanctions as the court deems appropriate.

13   E.   The parties are ordered to file with the court and
14   exchange between themselves not later than one (1) week before the
15   trial a statement designating portions of depositions intended to
16   be offered or read into evidence (except for portions to be used
17   only for impeachment or rebuttal).

18   F.   The parties are ordered to file with the court and
19   exchange between themselves not later than one (1) week before
20   trial the portions of answers to interrogatories which the
21   respective parties intend to offer or read into evidence at the
22   trial (except portions to be used only for impeachment or
23   rebuttal).

24   G.   The court has extensive audiovisual equipment available.
25   Any counsel contemplating its use shall contact the court's
26   Telecommunications Manager, Andre Carrier, at (916) 930-4223, at

17

1 | least two weeks in advance of trial to receive the appropriate
2 | training.

3 | **XVI. SETTLEMENT NEGOTIATIONS**

4 | A Settlement Conference is **SET** before the Honorable Kimberly
5 | J. Mueller on May 19, 2006, at 1:30 p.m. Counsel are directed to
6 | submit settlement conference statements to the settlement judge **not**
7 | **later than seven (7) days prior to the conference.** At counsel's
8 | option, such statements may be submitted in confidence pursuant to
9 | Local Rule 16-270(d).

10 | Each party is directed to have a principal capable of
11 | disposition at the Settlement Conference or to be fully authorized
12 | to settle the matter on any terms and at the Settlement Conference.

13 | **XVII. AGREED STATEMENTS**

14 | None.

15 | **XVIII. SEPARATE TRIAL OF ISSUES**

16 | Not appropriate.

17 | **XIX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS**

18 | None.

19 | **XX. ATTORNEYS' FEES**

20 | None.

21 | **XXI. MISCELLANEOUS**

22 | None.

23 | **XXII. ESTIMATE OF TRIAL TIME/TRIAL DATE**

24 | Trial by jury is **SET** for October 31, 2006, at 10:30 a.m., in
25 | Courtroom No. 4.

26 | ////

18

1    Counsel are to call Ana Rivas, Courtroom Deputy, at (916) 930-
2  4133, one week prior to trial to ascertain status of trial date.

3                **XXIII.   MODIFICATIONS TO PRETRIAL ORDER**

4    The parties are reminded that pursuant to Federal Rule of
5  Civil Procedure 16(e), this order shall control the subsequent
6  course of this action and shall be modified only to prevent
7  manifest injustice.

8    IT IS SO ORDERED.

9    DATED:   May 18, 2006.

10                              /s/Lawrence K. Karlton
                                LAWRENCE K. KARLTON
11                              SENIOR JUDGE
                                UNITED STATES DISTRICT COURT
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                19

1   Kay U. Brooks, California State Bar No. 106434
    W. Scott Cameron, California State Bar No. 229828
2   weintraub genshlea chediak
    law corporation
3   400 Capitol Mall, 11th Floor
    Sacramento, California  95814
4   (916) 558-6000 – Main
    (916) 446-1611 – Facsimile
5
    R. Todd Luoma, California State Bar No. 140066
6   Law Offices of R. Todd Luoma
    3600 American River Drive, Suite 135
7   Sacramento, California  95864
    (916) 971-2440
8
    Attorneys for Plaintiff
9   Bruce A. Tison, Executor/Administrator for the
    Estate of Charles G. Tison
10

11

12                         UNITED STATES DISTRICT COURT

13            IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15   BRUCE A. TISON, EXECUTOR/              Case No. CIV.S-04-1997 LKK GGH
     ADMINISTRATOR for the ESTATE OF
16   CHARLES G. TISON,
                                            PLAINTIFF'S SEPARATE PRETRIAL
17              Plaintiff,                   STATEMENT – WITNESS LIST

18        v.

19   UNITED STATES OF AMERICA,

20              Defendant.

21

22

23        Plaintiff Bruce A. Tison, Administrator for the Estate of Charles G. Tison

24   ("Plaintiff"), submits this Witness List as an addenda to his Separate Pretrial Statement

25   pursuant to the court's Pretrial Scheduling Order.  Plaintiff reasonably expects to call the

26   following witnesses:

27        1.    Bruce A. Tison

28        2.    Tony Benge

{10682/13949/WSC/885448.DOC;}                    ATTACHMENT "A"

weintraub genshlea chediak sproul
A LAW CORPORATION

1      3.    Dr. Henry Go

2      4.    Toshiko Hamada

3      5.    Ronald Paskins

4      6.    Betty Tison-Mettler

5      7.    James Cook

6      8.    Ramon Sides

7      9.    James York

8      10.   Seve Craner

9

10   Dated: April 3, 2006                    Respectfully submitted,

11                                           weintraub genshlea chediak
                                             law corporation
12

13
                                        By:    /S/ W. Scott Cameron
14                                             W. Scott Cameron
                                               State Bar No. 229828
15
                                             Attorneys for Plaintiff
16                                           Bruce A. Tison, Administrator
                                             for the Estate of Charles G. Tison
17

18

19

20

21

22

23

24

25

26

27

28

{10682/13949/WSC/885448.DOC;}        2        Plaintiff's Separate Pretrial Statement — Witness List

## EXHIBIT A: WITNESS LIST
### Bruce A. Tison v. United States.
### Civil No. S-04-1997 LKK GGH (USDC ED CA)

| Witness ID. | Name | Contact Information |
|---|---|---|
| A. | Dean Prodromos Insolvency Advisor Internal Revenue Service | 4330 Watt Avenue Sacramento, CA 95821 |
| B. | Bruce Tison | 13971 River Road Walnut Grove, CA |
| C. | Toshiko Hamada | 13971 River Road Walnut Grove, CA |
| D. | Dr. Henry Go | 11733 River Road Courtland, CA |
| E. | James York | 3600 American River Drive Sacramento, CA |

US' WITNESS LIST

ATTACHMENT "B"

1   Kay U. Brooks, California State Bar No. 106434
     W. Scott Cameron, California State Bar No. 229828
2   weintraub genshlea chediak
     law corporation
3   400 Capitol Mall, 11th Floor
     Sacramento, California 95814
4   (916) 558-6000 – Main
     (916) 446-1611 – Facsimile
5
     R. Todd Luoma, California State Bar No. 140066
6   Law Offices of R. Todd Luoma
     3600 American River Drive, Suite 135
7   Sacramento, California 95864
     (916) 971-2440
8
     Attorneys for Plaintiff
9   Bruce A. Tison, Executor/Administrator for the
     Estate of Charles G. Tison
10

11

12                 UNITED STATES DISTRICT COURT

13         IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15   BRUCE A. TISON, EXECUTOR/          )   Case No. CIV.S-04-1997 LKK GGH
     ADMINISTRATOR for the ESTATE OF   )
16   CHARLES G. TISON,                )
                             )   PLAINTIFF'S SEPARATE PRETRIAL
17          Plaintiff,         )   STATEMENT – EXHIBIT LIST
                             )
18      v.                     )
                             )
19   UNITED STATES OF AMERICA,       )
                             )
20         Defendant.         )
                             )
21   _____)

22

23        Plaintiff Bruce A. Tison, Administrator for the Estate of Charles G. Tison

24   ("Plaintiff"), submits this Exhibit List as an addenda to his Separate Pretrial Statement

25   pursuant to the court's Pretrial Scheduling Order. Plaintiff reasonably expects to offer

26   the following exhibits:

27        1.   Death Certificate of Charles G. Tison

28        2.   Charles G. Tison's 1993 tax year personal income tax return

{10682/13949/WSC/885450.DOC;}

*ATTACHMENT "C"*

weintraub genshlea chediak sprout
A LAW CORPORATION

1    3.    Charles G. Tison's 1994 tax year personal income tax return

2    4.    Charles G. Tison's 1996 tax year personal income tax return

3    5.    Charles G. Tison's 1997 tax year personal income tax return

4    6.    Charles G. Tison's 1998 tax year personal income tax return

5    7.    Charles G. Tison's 1999 tax year personal income tax return

6    8.    Charles G. Tison's 2000 tax year personal income tax return

7    9.    July 28, 2003, letter to the IRS from Ramon Sides

8    10.    Written Statement of Dr. Henry Go.

9    11.    Written Statement of Bruce A. Tison

10    12.    Letters to Charles G. Tison from insurance company re workers

11    compensation insurance.

12    13.    Request for Extension to file income tax return, filed on behalf of Charles

13    G. Tison, tax year 1993.

14    14.    Request for Extension to file income tax return, filed on behalf of Charles

15    G. Tison, tax year 1994.

16    15.    Request for Extension to file income tax return, filed on behalf of Charles

17    G. Tison, tax year 1996.

18    16.    Request for Extension to file income tax return, filed on behalf of Charles

19    G. Tison, tax year 1997.

20    17.    Request for Extension to file income tax return, filed on behalf of Charles

21    G. Tison, tax year 1998.

22    18.    Request for Extension to file income tax return, filed on behalf of Charles

23    G. Tison, tax year 1999.

24    19.    Request for Extension to file income tax return, filed on behalf of Charles

25    G. Tison, tax year 2000.

26    20.    Government's Statement of Account, Charles G. Tison, tax year 1993

27    21.    Government's Statement of Account, Charles G. Tison, tax year 1994

28    22.    Government's Statement of Account, Charles G. Tison, tax year 1996

{10682/13949/WSC/885450.DOC;}                    2                    Plaintiff's Separate Pretrial Statement – Exhibit List

1    23.    Government's Statement of Account, Charles G. Tison, tax year 1997

2    24.    Government's Statement of Account, Charles G. Tison, tax year 1998

3    25.    Government's Statement of Account, Charles G. Tison, tax year 1999

4    26.    Government's Statement of Account, Charles G. Tison, tax year 2000

5    27.    Government's Statement of Account, Charles G. Tison, tax year 2001

6    28.    Medical Records of Dr. Henry Go

7

8    Dated: April 3, 2006                    Respectfully submitted,

9                                            weintraub genshlea chediak
                                             law corporation
10

11

12                                    By:    /S/ W. Scott Cameron
                                             W. Scott Cameron
13                                           State Bar No. 229828

14                                           Attorneys for Plaintiff
                                             Bruce A. Tison, Administrator
15                                           for the Estate of Charles G. Tison

16

17

18

19

20

21

22

23

24

25

26

27

28

{10682/13949/WSC/885450.DOC;}              3              Plaintiff's Separate Pretrial Statement – Exhibit List

## EXHIBIT B: EXHIBIT LIST
### Bruce A. Tison v. United States
### Civil No. S-04-1997 LKK GGH (USDC ED CA)

| Ex. ID | Exhibit | Exhibit Summary |
|--------|---------|-----------------|
| A. | Employer's Annual Federal Unemployment (Form 940) Tax Return. | Ti-Gas's Form 940 tax return for the tax year ending December 31, 1999. |
| B. | Employer's Annual Federal Unemployment (Form 940) Tax Return. | Ti-Gas's Form 940 tax return for the tax year ending December 31, 2001. |
| C. | Employer's Quarterly Federal (Form 941) Tax Return. | Ti-Gas's Form 941 tax return for the tax period ending September 30, 1998. |
| D. | Employer's Quarterly Federal (Form 941) Tax Return. | Ti-Gas's Form 941 tax return for the tax period ending December 31, 1999. |
| E. | Employer's Quarterly Federal (Form 941) Tax Return . | Ti-Gas's Form 941 tax return for the tax period ending March 31, 2000. |
| F. | Employer's Quarterly Federal (Form 941) Tax Return. | Ti-Gas's Form 941 tax return for the tax period ending June 30, 2000. |
| G. | Employer's Quarterly Federal (Form 941) Tax Return. | Ti-Gas's Form 941 tax return for the tax period ending September 30, 2000. |
| H. | Copies of checks. | Copies of checks that Charles Tison wrote to the Internal Revenue Service |
| I. | Copies of checks. | Copies of checks that Charles Tison wrote to the United States Treasury and to the State of California Franchise Tax Board. |
| J. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1993 tax year. |

1635073.1

ATTACHMENT "D"

| K. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1994 tax year. |
|---|---|---|
| L. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1995 tax year. |
| M. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1996 tax year. |
| N. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1997 tax year. |
| O. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1998 tax year. |
| P. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 1999 tax year. |
| Q. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 2000 tax year. |
| R. | Application for an Automatic Extension of Time to File Income Tax Return. | Charles Tison's Application for an Automatic Extension of Time to File Income Tax Return for the 2001 tax year. |
| S. | Copies of checks. | 300+ copies of checks that Charles Tison's prepared and/or signed on behalf of Ti-Gas to pay for its expenses. |
| T. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1993 tax year, filed by Bruce Tison. |

1635073.1

2

| U. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1994 tax year, filed by Bruce Tison. |
|---|---|---|
| V. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1995 tax year, filed by Bruce Tison. |
| W. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1996 tax year, filed by Bruce Tison. |
| X. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1997 tax year, filed by Bruce Tison. |
| Y. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1998 tax year, filed by Bruce Tison. |
| Z. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 1999 tax year, filed by Bruce Tison. |
| 2A. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 2000 tax year, filed by Bruce Tison. |
| 2B. | W-2 & Income Tax Return. | Charles Tison's W-2 and Income Tax Return for the 2001 tax year, filed by Bruce Tison. |
| 2C. | Letter to Internal Revenue Service. | York & Associates' letter, dated July 28, 2003, sent on behalf of Bruce Tison requesting a refund in the amount of $213,976.00 involving the 1993 through 2001 tax years. |
| 2D. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1993. |
| 2E. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1994. |
| 2F. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1995. |
| 2G. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1996. |
| 2H. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1997. |
| 2I. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1998. |
| 2J. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 1999. |

| 2K. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 2000. |
|---|---|---|
| 2L. | Ti-Gas' Corporate Tax Return. | Ti-Gas' corporate income tax return for the tax year ending July 31, 2001. |
| 2M. | Death Certificate. | Sacramento County's Certificate of Death of Charles Tison. |
| 2N. | Letter to Internal Revenue Service. | Dr. Henry Go's letter, dated June 27, 2003, that he sent on behalf of Bruce Tison. |
| 2O. | Physical Report for Automobile Insurance | Physical Report for Automobile Insurance signed by Dr. Henry Go, dated June 26, 2001. |
| 2P. | Plaintiff's Response to US' First Set of Interrogatories. | Bruce Tison's response, dated June 30, 2005, to the United States' First Set of Interrogatories to Bruce Tison. |
| 2Q. | Plaintiff's Response to US' First Request for Admissions | Bruce Tison's response, dated June 30, 2002, to the United States' First Request for Admissions to Bruce Tison |
| 2R. | Summary Exhibit: Relevant Time Periods for Determination of Financial Disability | A summary exhibit of the relevant time periods for the determination of Charles Tison's alleged financial disability for the 1993, 1994, 1996, 1997, and 1998 tax years. See United States Pretrial Statement, ¶ XIV (section regarding proposed stipulations). |
| 2S. | Summary Exhibit: United States' assertions regarding Charles Tison's alleged financial disability. | A summary exhibit of the United States' assertions regarding Charles Tison's ability to manage his financial affairs during the relevant time period for the 1993, 1994, 1996, 1997, and 1998 tax years. |

1   Kay U. Brooks, California State Bar No. 106434
    W. Scott Cameron, California State Bar No. 229828
2   weintraub genshlea chediak sproul
    a law corporation
3   400 Capitol Mall, 11th Floor
    Sacramento, California 95814
4   Telephone: 916/558-6000
    Facsimile: 916/446-1611
5
6   Attorneys for Plaintiff
    Bruce A. Tison, Administrator for the
7   Estate of Charles G. Tison

8                          UNITED STATES DISTRICT COURT

9              IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  BRUCE A TISON, EXECUTOR/              Case No. CIV.S-04-1997 LKK GGH
    ADMINISTRATOR for the ESTATE OF
12  CHARLES G. TISON,

13         Plaintiff,                     RESPONSE OF PLAINTIFF BRUCE A.
                                          TISON, ADMINISTRATOR FOR THE
14  vs.                                   ESTATE OF CHARLES G. TISON TO
                                          DEFENDANT'S FIRST SET OF REQUESTS
15  UNITED STATES OF AMERICA,             FOR ADMISSION

16         Defendant.

17

18

19  PROPOUNDING PARTY:           Defendant United States of America

20  SET NO.:                     One (1)

21  RESPONDING PARTY:            Plaintiff Bruce A. Tison, Administrator for the
                                 Estate of Charles G. Tison
22

23                           PRELIMINARY STATEMENT

24         Discovery in this action is just beginning.  Accordingly, the responses to these

25  requests for admission are made without prejudice to plaintiff's right, if appropriate or

26  required, to further supplement or amend these responses with subsequently discovered

27  information.

28  ///

    {10482/11017/WSC/821394.DOC;}

                                    ATTACHMENT "E"

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST NO. 1:**

Please admit that, on or about April 15, 1994, Charles G. Tison paid $36,000 to the IRS to be applied to his individual income tax liability for the tax year ending December 31, 1993.

**RESPONSE TO REQUEST NO. 1:**

Admitted.

**REQUEST NO. 2:**

Please admit that, on or about April 15, 1995, Charles G. Tison paid $41,000 to the IRS to be applied to his individual income tax liability for the tax year ending December 31, 1994.

**RESPONSE TO REQUEST NO. 2:**

Admitted.

**REQUEST NO. 3:**

Please admit that, on or about April 15, 1996, Charles G. Tison paid $27,000 to the IRS to be applied to his individual income tax liability for the tax year ending December 31, 1995.

**RESPONSE TO REQUEST NO. 3:**

Admitted.

**REQUEST NO. 4:**

Please admit that neither Charles G. Tison nor Bruce A. Tison (as executor/ administrator of the estate of Charles G. Tison) fully paid each of the following items assessed by the IRS against Charles G. Tison for the tax year ending December 31, 1999:

(a)   taxes in the amount of $81,556.00

(b)   penalties In the amount of $14,043.80

(c)   interest in the amount of $9,646.14

///

{10682/11017/WSC/821394.DOC,}                    2                    Plaintiff's Response to Defendant's
First Set of Requests for Admission

1   <u>RESPONSE TO REQUEST NO. 4</u>:

2       Denied.

3   <u>REQUEST NO. 5</u>:

4       Please admit that neither Charles G. Tison nor Bruce A. Tison (as executor/

5   administrator for the estate of Charles G. Tison) fully paid each of the following items

6   assessed by the IRS against Charles G. Tison for the tax year ending December 31,

7   2000:

8       (a)     taxes in the amount of $57,581.00

9       (b)     penalties in the amount of $481.77

10      (c)     interest in the amount of $213.11

11  <u>RESPONSE TO REQUEST NO. 5</u>:

12      Denied.

13  <u>REQUEST NO. 6</u>:

14      Please admit that neither Charles G. Tison nor Bruce A. Tison (as the executor/

15  administrator for the estate of Charles G. Tison) fully paid each of the following items

16  assessed by the IRS against Charles G. Tison for the tax year ending December 31,

17  2001:

18      (a)     taxes in the amount of $27,440.00

19      (b)     penalties in the amount of $189.41

20      (c)     interest in the amount of $44.51

21  <u>RESPONSE TO REQUEST NO. 6</u>:

22      Denied.

23  <u>REQUEST NO. 7</u>:

24      Please   admit   that   on   the   following   dates   Bruce   A.   Tison,   as

25  executor/administrator for the estate of Charles G. Tison, filed tax returns with the

26  Internal Revenue Service on behalf of Charles G. Tison for the following tax years:

27      (a)     tax return for the 1993 tax year filed on January 22, 2003.

28      (b)     tax return for the 1994 tax year filed on January 23, 2003.

{10682/11017/W5C/621394.DOC;}                    3                    Plaintiff's Response to Defendant's
                                                                     First Set of Requests for Admission

1    (c)    tax return for the 1995 tax year filed on January 23, 2003.

2    (d)    tax return for the 1996 tax year filed on January 22, 2003.

3    (e)    tax return for the 1997 tax year filed on January 23, 2003.

4    (f)    tax return for the 1998 tax year filed on January 23, 2003.

5    (g)    tax return for the 1999 tax year filed on January 23, 2003.

6    (h)    tax return for the 2000 year filed on January 23, 2003.

7    (i)    tax return for the 2001 tax year filed on January 23, 2003.

8    **RESPONSE TO REQUEST NO. 7:**

9    (a)    Admitted.

10    (b)    Admitted.

11    (c)    Admitted.

12    (d)    Admitted.

13    (e)    Admitted.

14    (f)    Admitted.

15    (g)    Admitted.

16    (h)    Admitted.

17    (i)    Admitted.

18    **REQUEST NO. 8:**

19    Please admit that the tax returns filed for each of the tax years at issue (as set out

20    in Request for Admission No. 7) were the only claims for refund filed by either

21    Charles G. Tison or Bruce A. Tison, acting as executor/administrator for the Estate of

22    Charles G. Tison, for each of the tax years for which plaintiff claims a refund is due.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

weintraub genshlea chediak sproul
A LAW PARTNERSHIP

1    **RESPONSE TO REQUEST NO. 8:**

2    Denied.

3    Dated: June 30, 2005

                                         weintraub genshlea chediak sproul
                                         a law corporation

5

6                                     By:               W. Scott Cameron
                                         State Bar No. 229828

7                                     Attorneys for Plaintiff Bruce A. Tison,
                                     Executor/Administrator for the Estate of

8                                     Charles G. Tison

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{10682/11017/WSC/821394.DOC;}             5                     Plaintiff's Response to Defendant's
                                               First Set of Requests for Admission

1          <u>**VERIFICATION**</u>

2

3          I am the executor/administrator for the estate of Charles G. Tison.

4          I have read the foregoing Response of Plaintiff Bruce A. Tison,

5   Executor/Administrator for the Estate of Charles G. Tison to Defendant's Request for

6   Admissions and know its contents.  I am informed and believe and on that ground

7   allege that the matters stated therein are true.

8          I declare under penalty of perjury under the laws of the State of California that

9   the foregoing is true and correct.

10          Executed on June 30, 2005 at Sacramento, California.

11

12                                              _____
                                                Bruce A. Tison
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{10682/11017/WSC/824053.DOC;}                    1

Bruce Tison's Verification to Response of
Plaintiff Bruce A. Tison, Executor/Administrator
for the Estate of Charles G. Tison to
Defendant's Request for Admissions

# EXHIBIT D

1  Kay U. Brooks, California State Bar No. 106434
   W. Scott Cameron, California State Bar No. 229828
2  weintraub genshlea chediak sproul
   a law corporation
3  400 Capitol Mall, 11th Floor
   Sacramento, California  95814
4  Telephone:  916/558-6000
   Facsimile:   916/446-1611
5
   Attorneys for Plaintiff
6  Bruce A. Tison, Administrator for the
   Estate of Charles G. Tison
7



8                    UNITED STATES DISTRICT COURT

9            IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  BRUCE A TISON, EXECUTOR/           )  Case No. CIV.S-04-1997 LKK GGH
    ADMINISTRATOR for the ESTATE OF    )
12  CHARLES G. TISON,                  )
                                       )  RESPONSE OF PLAINTIFF BRUCE A.
13               Plaintiff,            )  TISON, ADMINISTRATOR FOR THE
                                       )  ESTATE OF CHARLES G. TISON TO
14           vs.                       )  DEFENDANT'S FIRST SET OF
                                       )  INTERROGATORIES
15  UNITED STATES OF AMERICA,          )
                                       )
16               Defendant.            )



17  ────────────────────────────────────
18
    PROPOUNDING PARTY:     Defendant United States of America
19
    SET NO.:               One (1)
20
    RESPONDING PARTY:      Plaintiff Bruce A. Tison, Administrator for the
21                         Estate of Charles G. Tison
22
23                    PRELIMINARY STATEMENT
24      Discovery in this action is just beginning.  Accordingly, the responses to these
25  requests for admission are made without prejudice to plaintiff's right, if appropriate or
26  required, to further supplement or amend these responses with subsequently discovered
27  information.
28      Responding party objects to the entire set of interrogatories in that it exceeds the

1   number allowed by Rule 33 of the Federal Rules of Civil Procedure. That Rule allows a

2   party to propound a maximum of 25 interrogatories, including discrete subparts. The

3   defendant's First Set of Interrogatories contains a total of at least fifty (50) separate

4   interrogatories when discrete subparts are counted. Notwithstanding this objection, and

5   without waiving it; responding party submits the following responses to defendant's first

6   set of interrogatories:

7                          **RESPONSES TO INTERROGATORIES**

8   **INTERROGATORY NO. 1:**

9        Identify all individuals who have any knowledge of the taxpayer's mental and/or

10   physical condition from January 1, 1993 until the taxpayer's death.

11   **RESPONSE TO INTERROGATORY NO. 1:**

12       Responding party objects to this interrogatory as vague and ambiguous as to the

13   meaning of "taxpayer's mental and/or physical condition." Further, the interrogatory is

14   overbroad, burdensome, and oppressive in that potentially every person the taxpayer

15   came in contact with during the ten years in question would have "any knowledge" of

16   his condition. This could amount to a list of literally thousands of people. Responding

17   party further objects that this interrogatory calls for speculation as to the knowledge

18   possessed by third parties. Notwithstanding these objections, and without waiving

19   them, responding party identifies the following individuals believed to possess relevant

20   knowledge of taxpayer's alcoholism during the time in question:

21       Bruce Tison, Charles Tison's son
22       Mr. Tison can be contacted through his counsel.

23       Larry C. Tison, Charles Tison's son
         312 East Mountain Street
24       Glendale, CA 91207

25       Dennis J. Tison, Charles Tison's son
26       4615 West Hearst Drive
         Meridian, Idaho 83642
27

28       Dr. Henry Go, Charles Tison's personal physician
         PO Box 330

{10682/11017/WSC/821958.DOC;}                    2                    Plaintiff's Response to Defendant's
                                                                      First Set of Interrogatories

1    Courtland, CA 95615
     (916) 775-1711

2

3    Toshiko Hamada
     Office Manager,
4    Best Ways Freight Lines, dba Ti-Gas Co.
     P.O. Box 364
5    Walnut Grove, CA 95690
     (916) 776-1643

6    Betty A. Tison-Mettler, Charles Tison's ex-wife
     9342 East Harney Lane
7    Lodi, CA 95240

8    Tim and Dixie Wilson
     P.O. Box 248
9    Walnut Grove, CA 95690

10   INTERROGATORY NO. 2:

11       Describe, for each of the individuals listed in response to interrogatory number 1,

12   what knowledge each individual possesses with regard to the taxpayer's mental and/or

13   physical condition and for what period of time each individual's knowledge is relevant.

14   RESPONSE TO INTERROGATORY NO. 2:

15       Responding Party objects to this interrogatory in that it calls for speculation.

16   Responding party is not able to recite the knowledge of others. Notwithstanding this

17   objection, and without waiving it, responding party believes the individuals listed in

18   Response to Interrogatory No. 1, other than responding party, possess relevant

19   knowledge of taxpayer's alcoholism during the time in question. Responding party's

20   own knowledge of taxpayer's mental and/or physical condition are as follows:

21       My Father, Charles G. Tison, and Mother, Betty Ann Tison-Mettler, formed the

22   Ti-Gas Company in 1969. In 1985, after 32 years of marriage, my Parents divorced.

23   In approximately 1990, my Parents again began dating. However, in 1993, my Father

24   began drinking alcohol again which prompted my Mother to end their relationship for

25   the final time. Having lost any possibility of reuniting with my Mother, my Father began

26   drinking alcohol excessively which rapidly deteriorated both his physical and mental

27   condition due to chronic acute alcoholism. My father was under the influence of

28   alcohol almost all the time during the years in question. It was very painful to watch this

{10682/11017/WSC/621956.DOC;}    3    Plaintiff's Response to Defendant's
                                                First Set of Interrogatories

1   man, admired and revered for both his kindness and generosity as both a local
2   businessman and resident, deteriorate due to his chronic acute alcoholism. My family
3   and I attempted on many occasions on an intervention basis to assist my Father with his
4   alcoholism but were only successful in influencing him to enroll in an Alcohol Recovery
5   Program, which he completed, but within two weeks of discharge from the Program
6   relapsed and again began drinking.

7       Upon my Father's death in September 2002, I was appointed the Administrator
8   of my Father's estate and asked by my Brothers to oversee the operation of Ti-Gas
9   Company on an interim basis. It was at that time that I truly saw the impact my Father's
10  chronic acute alcoholism had on the operation of Ti-Gas Company. Due to his chronic
11  acute alcoholism, my Father nearly ran the business my family owned to over 30 years
12  into the ground. In addition to not filing income taxes for the years in question, my
13  Father, who was the General Manager of the business, allowed 1) Worker's
14  Compensation Insurance to lapse; 2) Failed to both repair and replace vehicles and
15  equipment needed for the operation of Ti-Gas Company; 3) Failed to collect in excess
16  of $200,000 of delinquent Accounts Receivable from Customers. In fact, shortly before
17  his death, my Father reached a point of requesting that his Office Manager not open
18  any mail, including bills owed by the Company, in order that my Father deal with these
19  matters himself. However, due to his acute alcoholism, my Father failed to address
20  many simple tasks, such as promptly paying utility bills, which resulted in SMUD actually
21  turning off the power supplied to our place of business.

22      Having been a child of my Father and knowing him for 42 years, I can state
23  unequivocally and without reservation, that chronic acute alcoholism played a major
24  part in the deterioration of his marriage of 32 years to my Mother, as well as nearly
25  destroyed the Company my parents so proudly began in 1969. More importantly, is
26  was very painful as a child to watch this dreaded disease end the life of a man so
27  admired by so many.

28  //

1    **INTERROGATORY NO. 3:**

2    Describe all medical treatment obtained for and/or by the taxpayer from

3    January 1, 1993 until the taxpayer's death. Please include the following information for

4    each type of medical treatment sought:

5        a.    description of treatment sought

6        b.    time period when treatment sought

7        c.    name, address and phone number of doctor from whom treatment was

8    sought

9        d.    the result of the treatment by that doctor

10       e.    identify each person (if not the taxpayer) who took the taxpayer to each

11   doctor listed in response to this interrogatory.

12   **RESPONSE TO INTERROGATORY NO. 3:**

13   Responding Party objects to this interrogatory as being overbroad, burdensome

14   and oppressive, as taxpayer may have obtained medical treatment countless times in

15   the ten years in question. Responding party is unable to describe "all medical

16   treatment" taxpayer received during that time. Responding party further objects to the

17   extent the interrogatory seeks privileged information. Responding party further objects

18   that this interrogatory seeks information not relevant to the issues in this matter, and not

19   likely to reveal discoverable or relevant information, as the taxpayer may have sought

20   medical treatment for various ailments completely unrelated to the taxpayer's

21   alcoholism and financial disability. Notwithstanding these objections, and without

22   waiving them, responding party does not have personal knowledge of each time

23   treatment was sought. Responding party is also unaware as to the type of medical

24   treatment the taxpayer may have sought. However, responding party generally is aware

25   that taxpayer sought medical treatment at various times from Dr. Henry Go and also

26   from Methodist Hospital, 7500 Hospital Drive, Sacramento, California, (916) 689-

27   9000.

28   //

1 INTERROGATORY NO. 4:

2     For each and every one of the matters set forth in the United States' First Request
3 for Admissions [sic] that is denied or objected to, or for which any response other than
4 an unqualified "admit" is given, please:

5     a)   State the facts and the identity of any person(s) with personal knowledge
6 concerning the facts upon which you base your denial, objection or other answer.

7     b)   state the facts, including the identity of any documents that contain such
8 facts and the custodian of these documents, upon which you base your denial,
9 objection, or other answer.

10 RESPONSE TO INTERROGATORY NO. 4:

11     Request for Admission No. 4:   Taxpayer fully paid taxes due for tax year 1999
12 by requesting overpayments made in prior years be applied to tax year 1999. The
13 individual with knowledge concerning the facts upon which this denial is made is
14 Ramon Sides, York and Associates, 3600 American River Drive, Suite 135, Sacramento,
15 California, (916) 971-2470. The documents which contain said facts are the tax
16 returns for tax year 1999 and the returns for tax years 1993-1998. These documents
17 are in the possession of the Internal Revenue Service.

18     Request for Admission No. 5:   Taxpayer fully paid taxes due for tax year 2000
19 by requesting overpayments made in prior years be applied to tax year 2000. The
20 individual with knowledge concerning the facts upon which this denial is made is
21 Ramon Sides, York and Associates, 3600 American River Drive, Suite 135, Sacramento,
22 California, (916) 971-2470. The documents which contain said facts are the tax
23 returns for tax year 2000 and the returns for tax years 1993-1998. These documents
24 are in the possession of the Internal Revenue Service.

25     Request for Admission No. 6:   Taxpayer fully paid taxes due for tax year 2001
26 by requesting overpayments made in prior years be applied to tax year 2001. The
27 individual with knowledge concerning the facts upon which this denial is made is
28 Ramon Sides, York and Associates, 3600 American River Drive, Suite 135, Sacramento,

{10652/11017/WSC/821958.DOC;}     6     Plaintiff's Response to Defendant's
First Set of Interrogatories

1   California, (916) 971-2470. The documents which contain said facts are the tax
2   returns for tax year 2001 and the returns for tax years 1993-1998. These documents
3   are in the possession of the Internal Revenue Service.

4       Request for Admission No. 8:    The tax returns filed in each of the years in
5   question was not the only claim for refund filed. The tax returns were the first such
6   request, but this was followed by subsequent requests to the Internal Revenue Service,
7   including the letter from Ramon Sides written on July 28, 2003. A copy of this letter
8   was included as Exhibit A to the complaint in this matter.

## INTERROGATORY NO. 5:

10      Describe all treatment sought, from January 1, 1993 until the taxpayer's death,
11  for the taxpayer's problem with alcohol.

12  ## RESPONSE TO INTERROGATORY NO. 5:

13      Responding party objects to this interrogatory as it is vague and ambiguous as to
14  the meaning of "problem with alcohol," and "problem with alcohol" is not defined.
15  Notwithstanding this objection, and without waiving it, and treating "problem with
16  alcohol" as referring to taxpayer's chronic acute alcoholism which resulted in his
17  physical condition and mental impairment, responding party answers as follows:

18      Responding party lacks personal knowledge of all treatment sought by taxpayer
19  for this problem and is thus unable to describe "all treatment" the taxpayer may have
20  received for a problem with alcohol or any other problem. Responding party is
21  generally aware that taxpayer sought treatment from Dr. Henry Go and Methodist
22  Hospital, 7500 Hospital Drive, Sacramento, California, (916) 689-9000, and believes
23  that taxpayer's alcoholism was among the ailments for which he sought treatment.
24  Further, responding party understands that taxpayer received treatment at an in-patient
25  rehabilitation center in Napa Valley, California, on at least on occasion, however
26  responding party does not have details as to this treatment. Responding party is
27  attempting to ascertain the name of the center in Napa Valley, and will forward this
28  information as it becomes known. Responding party is also aware that taxpayer made

{10682/11017/WSC/821958.DOC;}                 7                    Plaintiff's Response to Defendant's
                                                                   First Set of Interrogatories

1    a decision to seek treatment for his alcoholism just days prior to his death in September

2    of 2002, and that when he was admitted to Methodist Hospital for this treatment he

3    was suffering from delirium tremens so severe that the hospital was forced to use

4    restraints to keep him in bed for approximately four days. These were four days in the

5    last week of his life.

6    **INTERROGATORY NO. 6:**

7        During the tax periods at issue, identify any person who (for any period of time)

8    had the authority to act on behalf of the taxpayer in financial matters.

9    **RESPONSE TO INTERROGATORY NO. 6:**

10       Responding party is informed and believes that the taxpayer himself was the only

11    person with authority to act on behalf of the taxpayer in financial matters during the tax

12    periods at issue.

13    **INTERROGATORY NO. 7:**

14       For each job held by the taxpayer between January 1, 1993 and his death:

15    (1) identify the taxpayer's employer, (2) state the position(s) held by the taxpayer, (3)

16    state the duration of time the taxpayer held each position (4) state the duties performed

17    by the taxpayer in each position and (5) state the number of times the taxpayer was

18    absent from work.

19    **RESPONSE TO INTERROGATORY NO. 7:**

20       Responding party objects to this interrogatory as it is vague and ambiguous as to

21    the meaning of "absent from work," and "absent from work" is not defined.

22    Notwithstanding this objection, and without waiving it, responding party answers as

23    follows:

24       For the time between January 1, 1993, and his death, taxpayer was owner and

25    general manager of Best Ways Freight Lines, dba Ti-Gas Co. ("Ti-Gas"). Responding

26    party is informed and believes that the taxpayer's duties generally included managing

27    the overall operation of the low pressure gas distribution business. Due to the

28    taxpayer's physical and mental impairments as a result of alcohol abuse, however, not

Case 2:04-cv-01997-LKK-GGH Document 50 Filed 05/01/2006 Page 45 of 59

Case 2:04-cv-01997-LKK-GGH Document 48-2 Filed 04/10/2006 Page 24 of 38

1   all of these duties were consistently performed. On a number of occasions bills were

2   not paid which resulted in utilities being discontinued and suppliers refusing to sell to Ti-

3   Gas Co. on any terms other than payment in cash. Other routine business expenses

4   were not maintained, including such expenses as basic, and important, as worker's

5   compensation insurance, which was allowed to lapse. Another duty was collecting Ti-

6   Gas' accounts receivable, but that also was not done. No effort was made to collect

7   any accounts receivable, and as much as 20% of the business revenue was in this

8   category. Many of these accounts were many years overdue. The taxpayer was also

9   responsible for maintaining relationships with Ti-Gas' customers, but he lost many

10   customers due to his being under the influence of alcohol, and physically and mentally

11   impaired as a result, when he would interact with them.

12       Taxpayer did not keep attendance records indicating when he was at work and

13   when he was absent, therefore responding party is unable to state the number of times

14   taxpayer was absent from work.

15   **INTERROGATORY NO. 8:**

16       List the following information regarding the taxpayer's association with Best-Way

17   Freight Lines d/b/a Ti-Gas Co. ("Ti-Gas Co."): (1) all positions held by the taxpayer,

18   (2) time period each position was held, and (3) duties performed by the taxpayer in

19   each position.

20   **RESPONSE TO INTERROGATORY NO. 8:**

21       For the time between January 1, 1993, and his death, taxpayer was owner and

22   general manager of Ti-Gas. Responding party is informed and believes that the

23   taxpayer's duties generally included managing the overall operation of the low pressure

24   gas distribution business. Due to the taxpayer's physical and mental impairments as a

25   result of alcohol abuse, however, not all of these duties were consistently performed.

26   On a number of occasions bills were not paid which resulted in utilities being

27   discontinued and suppliers refusing to sell to Ti-Gas Co. on any terms other than

28   payment in cash. Other routine business expenses were not maintained, including such

(10682/11017/WSC/821958.DOC:)     9     Plaintiff's Response to Defendant's First Set of Interrogatories

1    expenses as basic, and important, as worker's compensation insurance, which was
2    allowed to lapse. Another duty was collecting Ti-Gas' accounts receivable, but that
3    also was not done. No effort was made to collect any accounts receivable, and as
4    much as 20% of the business revenue was in this category. Many of these accounts
5    were many years overdue. The taxpayer was also responsible for. maintaining
6    relationships with Ti-Gas' customers, but he lost many customers due to his being under
7    the influence of alcohol, and physically and mentally impaired as a result, when he
8    would interact with them.

9    **INTERROGATORY NO. 9:**

10   Describe any involvement (including any ownership interest) the taxpayer had
11   with Ti-Gas Co. not included in response to Interrogatory number 6.

12   **RESPONSE TO INTERROGATORY NO. 9:**

13   For the time between January 1, 1993, and his death, taxpayer was owner and
14   general manager of Ti-Gas.

15   **INTERROGATORY NO. 10:**

16   Identify (include the period of time each individual was associated with Ti-Gas
17   Co.) all individuals associated with Ti-Gas Co. during the time periods that the taxpayer
18   was associated with it.

19   **RESPONSE TO INTERROGATORY NO. 10:**

20   Responding party objects to this Interrogatory as being vague and ambiguous as
21   to the meaning of "associated with," and "associated with" is not defined. Responding
22   party further objects to this interrogatory as being overbroad, burdensome, and
23   oppressive in that "all individuals associated with Ti-Gas Co." could include thousands
24   of employees, customers, vendors, suppliers, and all employees of any company Ti-Gas
25   did business with. Therefore, responding party lacks the knowledge to identify "all
26   individuals associated with Ti-Gas."

27   If "all people associated with Ti-Gas Co." means all people employed by Ti-Gas
28   Co., responding party identifies the following persons, all of whom may be reached at

{10682/11017/WSC/821956.DOC;}                    10                    Plaintiff's Response to Defendant's
                                                                        First Set of Interrogatories

1    Ti-Gas Co.'s address, P.O. Box 364, Walnut Grove, CA 95690, (916) 776-1643:

2         Toshi Hamada -- Office Manager

3         Tony Benge -- Service Technician

4         Stephen Craner -- Delivery Driver

5         Felix Guzman -- Delivery Driver

6         Doris McQuaid -- Administrative Assistant

7         Jason Medlock -- Delivery Driver

8    **INTERROGATORY NO. 11:**

9         Identify all people with knowledge of the taxpayer's involvement with Ti-Gas Co.

10   from January 1, 1993 until the taxpayer's death.

11   **RESPONSE TO INTERROGATORY NO. 11:**

12        Responding party objects to this interrogatory as being overbroad, burdensome

13   and oppressive, in that "all people with knowledge of the taxpayer's involvement with

14   Ti-Gas Co." could include countless numbers of employees, customers, vendors,

15   suppliers, and all employees of any company Ti-Gas did business with.  Responding

16   party further objects to this interrogatory in that it calls for speculation on the part of the

17   responding party.  Responding party is unable to state the knowledge of other people,

18   including whether a particular person has knowledge of taxpayer's involvement with Ti-

19   Gas.    Finally, responding party objects to this interrogatory in that it is vague and

20   ambiguous as to the meaning of "taxpayer's involvement with Ti-Gas Co." and that

21   term is not defined.  Due to this ambiguity, responding party is unable to provide an

22   answer to this interrogatory as drafted.

23   **INTERROGATORY NO. 12:**

24        For all residences held by the taxpayer between January 1, 1993 and the

25   taxpayer's death, state:  (1) the amount of the monthly mortgage payment, (2) the

26   method payment used to pay the mortgage, (3) every month the mortgage payment

27   was late and why, and (4) if an individual (other than the taxpayer) paid the mortgage,

28   identify the individual and which month(s) that individual paid the taxpayer's mortgage.

{10682/11017/WSC/821958.DOC;}                    11              Plaintiff's Response to Defendant's
                                                                First Set of Interrogatories

1   **RESPONSE TO INTERROGATORY NO. 12:**

2       Responding party objects to this interrogatory in that it is vague and ambiguous

3   as to the meaning of "held by," and "held by" is not defined. Notwithstanding this

4   objection, and without waiving it, treating "held by" as meaning "owned by,"

5   responding party answers as follows:

6       Taxpayer did not own any residences between January 1, 1993, and his death.

7   **INTERROGATORY NO. 13:**

8       Identify the source of the following funds the taxpayer deposited with the IRS:

9       (a)    $36,000 deposited on or around April 15, 1994 for the 1993 tax year

10      (b)    $41,000 deposited on or around April 15, 1995 for the 1994 tax year

11      (c)    $40,000 deposited on or around April 15, 1996 for the 1995 tax year

12  **RESPONSE TO INTERROGATORY NO. 13:**

13      Responding party objects to this interrogatory because it calls for speculation on

14  the part of the responding party. Responding party lacks sufficient information to

15  answer this interrogatory as he does not know the source of the funds taxpayer used for

16  the payments in question.

17  **INTERROGATORY NO. 14:**

18      Please explain why the taxpayer deposited the following amounts with the IRS:

19  (a) $36,000 on or around April 15, 1994 for the 1993 tax year, (b) $41,000 on or

20  around April 15, 1995 for the 1994 tax year, and (c) $40,000 on or around April 15,

21  1996 for the 1995 tax year.

22  **RESPONSE TO INTERROGATORY NO. 14:**

23      Responding party objects to this interrogatory because it calls for speculation on

24  the part of the responding party. Responding party lacks sufficient information to

25  answer this interrogatory as he does not have personal knowledge as to why the

26  taxpayer made the payments listed.

27  **INTERROGATORY NO. 15:**

28      For the time period between January 1, 1993 and the taxpayer's death, describe

{10682/11017/WSC/821958.DOC;}          12                    Plaintiff's Response to Defendant's
                                                             First Set of Interrogatories

Case 2:04-cv-01997-LKK-GGH Document 50 Filed 05/01/2006 Page 49 of 59


the taxpayer's annual transportation expenses. In the description for each tax year include: (1) the type of car owned by the taxpayer, (2) the monthly payment on the car, (3) any insurance payments, (4) miles driven per year, and (5) the status of the taxpayer's driver's license.

RESPONSE TO INTERROGATORY NO. 15:

Responding party is informed and believes that taxpayer did not own a car at any time between January 1, 1993 and his death. Responding party is further informed and believes that taxpayer's driver's license was suspended in or around the year 2000 as a result of a conviction for driving under the influence of alcohol.

INTERROGATORY NO. 16:

List the following for all bank accounts which were, between January 1, 1993, and the taxpayer's death, either: (1) in the taxpayer's name or (2) associated with the taxpayer in any way.

(a) bank name

(b) account number

(c) primary purpose of the account

(d) all individuals authorized to sign checks from the account

RESPONSE TO INTERROGATORY NO. 16:

Responding party is informed and believes that taxpayer did not have a bank account in his name during the time in question. He did, however, maintain an account in Ti-Gas Co.'s name at Bank of Rio Vista, account number 1605891. Responding party is aware of no specific "primary purpose" for this account. Responding party is informed and believes that the only individual authorized to sign checks on this account was the taxpayer himself.

INTERROGATORY NO. 17(a):

Please state the amount of refund, calculated independently of any other tax year(s), claimed by the estate of the taxpayer for each of the following tax years:

(1) 1993

| | | |
|---|---|---|
| 1 | (2) | 1994 |
| 2 | (3) | 1995 |
| 3 | (4) | 1996 |
| 4 | (5) | 1997 |
| 5 | (6) | 1998 |
| 6 | (7) | 1999 |
| 7 | (8) | 2000 |
| 8 | (9) | 2001 |

9    RESPONSE TO INTERROGATORY NO. 17(a):

| | | |
|---|---|---|
| 10 | (1) | $32,117.00. |
| 11 | (2) | $34,272.00 |
| 12 | (3) | $27,100.00 |
| 13 | (4) | $45,138.00 |
| 14 | (5) | $66,927.00 |
| 15 | (6) | $44,148.00 · |
| 16 | (7) | No refund claimed. |
| 17 | (8) | No refund claimed. |
| 18 | (9) | No refund claimed. |

19

20    INTERROGATORY NO. 17(b):

21    For each of the tax years at issue, list all documents that support your claim that

22    a refund is due in the amount sated in response to Interrogatory 17(a).

| | | |
|---|---|---|
| 23 | (1) | 1993 |
| 24 | (2) | 1994 |
| 25 | (3) | 1995 |
| 26 | (4) | 1996 |
| 27 | (5) | 1997 |
| 28 | (6) | 1998 |

1    (7)    1999

2    (8)    2000

3    (9)    2001

4    ## RESPONSE TO INTERROGATORY NO. 17(b):

5    (1)    Tax Return IRS Form 1040 filed by Bruce Tison, letter from Ramon Sides to
6    the Internal Revenue Service dated July 28, 2003, Written statement of Bruce A. Tison,
7    written statement of Dr. Henry Go, Notices from IRS, and Charles Tison's death
8    certificate.

9    (2)    Tax Return IRS Form 1040 filed by Bruce Tison, letter from Ramon Sides to
10    the Internal Revenue Service dated July 28, 2003, Written statement of Bruce A. Tison,
11    written statement of Dr. Henry Go, notices from IRS, including a notice dated July 3,
12    2003, and Charles Tison's death certificate.

13    (3)    Tax Return IRS Form 1040 filed by Bruce Tison, letter from Ramon Sides to
14    the Internal Revenue Service dated July 28, 2003, Written statement of Bruce A. Tison,
15    written statement of Dr. Henry Go, notices from IRS, including a notice dated March
16    10, 2003, and Charles Tison's death certificate.

17    (4).    Tax Return IRS Form 1040 filed by Bruce Tison, letter from Ramon Sides to
18    the Internal Revenue Service dated July 28, 2003, Written statement of Bruce A. Tison,
19    written statement of Dr. Henry Go, notices from IRS, including a notice dated March
20    31, 2003, and Charles Tison's death certificate.

21    (5)    Tax Return IRS Form 1040 filed by Bruce Tison, letter from Ramon Sides to
22    the Internal Revenue Service dated July 28, 2003, Written statement of Bruce A. Tison,
23    written statement of Dr. Henry Go, notices from IRS, including a notice dated March
24    10, 2003, and Charles Tison's death certificate.

25    (6)    Tax Return IRS Form 1040 filed by Bruce Tison, letter from Ramon Sides to
26    the Internal Revenue Service dated July 28, 2003, Written statement of Bruce A. Tison,
27    written statement of Dr. Henry Go, notices from IRS, including a notice dated March
28    10, 2003, and Charles Tison's death certificate.

1    (7)    No refund claimed.

2    (8)    No refund claimed.

3    (9)    No refund claimed.

4    **INTERROGATORY NO. 17(c):**

5    For each of the tax years at issue, state the facts that support your claim that a

6    refund is due in the amount stated in response to Interrogatory number 17(a).

7    (1)    1993

8    (2)    1994

9    (3)    1995

10   (4)    1996

11   (5)    1997

12   (6)    1998

13   (7)    1999

14   (8)    2000

15   (9)    2001

16   **RESPONSE TO INTERROGATORY NO. 17(c):**

17   (1) – (6)    During the tax periods relevant to this matter, the taxpayer was

18   extremely ill and unable to manage his financial affairs due to physical and mental

19   impairment. He was an alcoholic for many years, including the years at issue. He had

20   heart, kidney, lung and other organ diseases, caused by or aggravated by alcoholism.

21   The severity of his conditions is evidenced by his untimely death, which was caused by

22   these conditions.

23   Dr. Henry Go, the taxpayer's physician of 16 years, has provided his medical

24   opinion that the taxpayer was unable to maintain his financial affairs based on his

25   physical and mental conditions, which were caused by his chronic acute alcoholism.

26   He also provided an opinion that this had been a continuing problem for the ten years

27   preceding his death.

28   The taxpayer owned Best Way Freight Lines dba Ti-Gas Company, a business

{10682/11017/WSC/821958.DOC;}                    16                    Plaintiff's Response to Defendant's
                                                                      First Set of Interrogatories

1    that specializes in propane distribution. While the taxpayer did occupy the position of
2    "manager" during his impairment, he did not actually manage the business and in fact
3    almost ran Ti-Gas out of business.  There were numerous day-to-day operational
4    decisions over the course of ten years that he simply did not deal with due to his
5    physical and mental impairments resulting from his severe acute alcoholism.  For
6    example, he allowed his workers' compensation insurance to lapse and therefore had
7    no coverage for any of his employees in the event of an injury or accident.

8         The taxpayer also failed to carry the required liability insurance for two Ti-Gas
9    service vehicles. He allowed equipment to deteriorate to the point that upon his death,
10   his personal representative or administrator immediately had to purchase a new delivery
11   truck and a new service truck. Preventative maintenance simply went ignored, and the
12   failure to replace worn out equipment when needed resulted in significant down time
13   for repairs. These facts clearly demonstrate his inability to manage his business, and
14   this inability was caused by his addiction to alcohol.

15        In another example of the taxpayer's inability to manage his business, he failed
16   to collect Ti Gas' accounts receivable. He carried over $200,000 more than twenty
17   percent (20%) of Ti-Gas' sales, in accounts receivable, and he never made any effort to
18   collect them. Some of these accounts were several years old.

19        The taxpayer insisted on handling all Ti-Gas bills himself, many of which
20   consistently went unpaid.  Sacramento Municipal Utilities District (SMUD) supplied
21   electricity to the business. On several occasions the electricity was turned off for failure
22   to pay the electric bills. SMUD's policy was to send a 15-day notice as well as a 48-
23   hour notice prior to shutting off power, however due to the taxpayer's illness, he
24   ignored the bills and the notices until the power was in fact turned off.  He had the
25   money to pay the bill each time, but he didn't pay the bill because he was almost
26   constantly under the influence of alcohol.

27        When the taxpayer died, he had absolutely no succession plan and no methods
28   in place to continue the business, to make payroll, write checks, etc.  At the time he

{10682/11017/WSC/821958.DOC;}                17              Plaintiff's Response to Defendant's
                                                             First Set of Interrogatories

died there was an immediate need to keep all the employees staffed and payroll
obligations met, therefore the petition to appoint a special administrator had to be filed
on an extremely urgent basis.

Taxpayer leased TI-Gas' land and building, and the lease contained an option to
buy the land and building. The lessor gave him the opportunity to purchase the land
and the building on a number of occasions but the taxpayer failed to act. In fact, the
lease had long expired. This was not sound judgment because the best business
decision would have been to purchase the land and buildings or renew and extend the
lease. Had the business been forced to relocate, this would have cost tens of
thousands of dollars.

    (7)   No refund claimed.

    (8)   No refund claimed.

    (9)   No refund claimed.

## INTERROGATORY NO. 18:

If your response to any of the United States' First Set of Requests for Admission
have been denied in whole or in part, for each request for admission so denied, state
the legal and factual basis for your denial and what you contend is a correct statement
of the subject matter asserted in the admission.

## RESPONSE TO INTERROGATORY NO. 18:

Responding party objects to this interrogatory in that it is duplicative of
interrogatory number 4. Notwithstanding this objection, and without waiving it,
responding party answers as follows:

Request for Admission No. 4:    Taxpayer fully paid taxes due for tax year 1999
by requesting overpayments made in prior years be applied to tax year 1999.

Request for Admission No. 5:    Taxpayer fully paid taxes due for tax year 2000
by requesting overpayments made in prior years be applied to tax year 2000.

Request for Admission No. 6:    Taxpayer fully paid taxes due for tax year 2001
by requesting overpayments made in prior years be applied to tax year 2001.

1    Request for Admission No. 8:   The tax returns filed in each of the years in

2 question was not the only claim for refund filed. The tax returns represented one such

3 request, but this was followed by subsequent requests to the Internal Revenue Service,

4 including the letter from Ramon Sides written on July 28, 2003. A copy of this letter

5 was included as Exhibit A to the complaint in this matter.

6 Dated: June 30, 2005                      weintraub genshlea chediak sproul
                                            a law corporation
7

8

9
                                       By:
10                                          W. Scott Cameron
                                            State Bar No. 229828
11
                                            Attorneys for Plaintiff Bruce A. Tison,
12                                          Administrator for the Estate of
                                            Charles G. Tison
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I am the executor/administrator for the estate of Charles G. Tison.

I have read the foregoing Response of Plaintiff Bruce A. Tison, Executor/Administrator for the Estate of Charles G. Tison to Defendant's First Set of Interrogatories and know its contents. I am informed and believe and on that ground allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 30, 2005 at Sacramento, California.

_____
Bruce A. Tison

Bruce Tison's Verification to Response of
Plaintiff Bruce A. Tison, Executor/Administrator
for the Estate of Charles G. Tison to
Defendant's First Set of Interrogatories

1  Kay U. Brooks, California State Bar No. 106434
   W. Scott Cameron, California State Bar No. 229828
2  weintraub genshlea chediak sproul
   a law corporation
3  400 Capitol Mall, 11th Floor
   Sacramento, California 95814
4  Telephone:   916/558-6000
   Facsimile:    916/446-1611
5
6  Attorneys for Plaintiff
   Bruce A. Tison, Administrator for the
7  Estate of Charles G. Tison

8                    UNITED STATES DISTRICT COURT

9         IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  BRUCE A TISON, EXECUTOR/              )   Case No. CIV.S-04-1997 LKK GGH
    ADMINISTRATOR for the ESTATE OF       )
12  CHARLES G. TISON,                     )
                                          )   SUPPLEMENTAL RESPONSE OF
13            Plaintiff,                   )   PLAINTIFF BRUCE A. TISON,
                                          )   ADMINISTRATOR FOR THE ESTATE OF
14  vs.                                   )   CHARLES G. TISON TO DEFENDANT'S
                                          )   FIRST SET OF INTERROGATORIES
15  UNITED STATES OF AMERICA,             )
                                          )
16            Defendant.                   )

17  ─────────────────────────────

18  PROPOUNDING PARTY:       Defendant United States of America
19
    SET NO.:                 One (1)
20
    RESPONDING PARTY:        Plaintiff Bruce A. Tison, Administrator for the
21                           Estate of Charles G. Tison
22

23                    PRELIMINARY STATEMENT

24      Responding party submits his supplemental response to Defendant United States'

25  first set of interrogatories.  Discovery has revealed information that responding party

26  believes warrants supplementing his prior response.

27      Responding party continues to object to the entire set of interrogatories in that it

28  exceeds the number allowed by Rule 33 of the Federal Rules of Civil Procedure.  That

{10682/13949/W5C/832363.DOC;}              1        Plaintiff's Supplemental Response to Defendant's
                                                              First Set of Interrogatories

weintraub genshlea chediak sproul
A LAW CORPORATION

1   Rule allows a party to propound a maximum of 25 interrogatories, including discrete
2   subparts. The defendant's First Set of Interrogatories contains a total of at least fifty
3   (50) separate interrogatories when discrete subparts are counted. Notwithstanding this
4   objection, and without waiving it, responding party submits the following supplemental
5   response to defendant's first set of interrogatories:

6                              **RESPONSES TO INTERROGATORIES**

7   **INTERROGATORY NO. 16:**

8          List the following for all bank accounts which were, between January 1, 1993,
9   and the taxpayer's death, either: (1) in the taxpayer's name or (2) associated with the
10  taxpayer in any way.

11          (a)   bank name

12          (b)   account number

13          (c)   primary purpose of the account

14          (d)   all individuals authorized to sign checks from the account

15  **RESPONSE TO INTERROGATORY NO. 16:**

16         Responding party is informed and believes that taxpayer did not have a bank
17  account in his name during the time in question. He did, however, maintain an
18  account in Ti-Gas Co.'s name at Bank of Rio Vista, account number 1605891.
19  Responding party is aware of no specific "primary purpose" for this account.
20  Responding party is informed and believes that the only individual authorized to sign
21  checks on this account was the taxpayer himself.

22  //
23  //
24  //
25  //
26  //
27  //
28  //  .

weintraub genshlea chediak sproul
A LAW CORPORATION

{10682/13949/WSC/832363.DOC;}                    2              Plaintiff's Supplemental Response to Defendant's
                                                                    First Set of Interrogatories

Case 2:04-cv-01997-LKK-GGH Document 57 Filed 05/18/06 Page 59 of 59
Case 2:04-cv-01997-LKK-GGH Document 50 Filed 05/01/2006 Page 59 of 59
Case 2:04-cv-01997-LKK-GGH Document 48-2 Filed 04/10/2006 Page 38 of 38

1    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

2        Responding party has determined that Toshiko Hamada, Ti-Gas' office manager,

3    was given authority to sign checks drawn on the Ti-Gas checking account in 1997.

4    Dated: August 13, 2005            weintraub genshlea chediak sproul

5                                    a law corporation

6

7                              By: _____

8                                  W. Scott Cameron
                                  State Bar No. 229828

9

10                                  Attorneys for Plaintiff Bruce A. Tison,
                                 Administrator for the Estate of
                                 Charles G. Tison

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{10682/13949/WSC/832363.DOC;}            3            Plaintiff's Supplemental Response to Defendant's
                                                       First Set of Interrogatories

weintraub genshlea chediak sproul
a law corporation